FRANK ALLAIRE, as Trustee of the Estate of JULIUS ULLMAN CO., INC., Bankrupt, Appellant, *v.* ABRAHAM A. SILBERBERG, Respondent.

First Department, July 2, 1924.

Corporations — transfer of corporate property in violation of Stock Corporation Law of 1909, § 66 (now Stock Corporation Law of 1923, § 15) — action against stockholder by trustee in bankruptcy of corporation to recover property unlawfully transferred to him — notes of corporation and trade acceptances were protested for non-payment with knowledge of defendant — thereafter corporation borrowed money from bank on security of entire stock in trade and defendant received $10,000 to cover his stock investment and $5,000 as profits — defendant deposited $15,000 as security for loan — finding that corporation was not insolvent or in danger thereof against evidence — error to reject evidence of conversation between defendant and other stockholder relating to insolvency of corporation — defendant must account.

In an action by a trustee in bankruptcy of a corporation to recover from a stockholder money transferred to him in alleged violation of section 66 of the Stock Corporation Law of 1909 (now Stock Corporation Law of 1923, § 15), which provides, in effect, that no corporation which shall have refused to pay any of its notes or other obligations when due, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders for the payment of any debt or upon any other consideration than the full value of the property paid in cash and that every person receiving property in violation of the section shall be bound to account therefor, the finding by the jury that the corporation was not insolvent or in danger of insolvency when the defendant received $10,000 from the corporation to cover the full amount of his stock investment and $5,000 as profits, is not sustained by the evidence which shows that the defendant and one other were the sole stockholders of the corporation; that the defendant took an active part in the management of its affairs and was familiar with its financial condition; that after several notes and a trade acceptance were protested for non-payment, the defendant notified the other stockholder that he wished to withdraw from the corporation and demanded the full amount he invested and $5,000 as profits; that though the defendant was informed that if that amount were paid him the corporation would be bankrupt, he arranged a loan with a bank on behalf of the corporation for $32,000 and the corporation gave as security its entire stock in trade; that $15,000 was paid to the defendant out of the amount borrowed which he deposited

with the bank as further security and the balance was used to pay debts of the corporation; and that about six months thereafter the corporation was adjudged a bankrupt with claims to the amount of $14,500 which had their origin prior to the time the defendant received the money.

It was error for the court, in view of the fact that the defendant gave no evidence, and that the court gave the defendant the benefit of leaving to the jury the question whether or not from the undisputed evidence introduced by the plaintiff there was an inference that the corporation was insolvent at the time of the alleged transaction, to reject testimony on the part of the other stockholder as to a conversation which he had with the defendant shortly after the transaction in question, which conversation tended to show an admission by the defendant that a condition of insolvency either existed or was imminent.

It was error for the court to hold that the $15,000 was not received by the defendant on the ground that he immediately deposited it with the bank making the loan as further security, since it appears that the money was actually transferred to the defendant and that he retained control thereof, and if the loan to the bank had been repaid by the corporation, the $15,000 would have been received in full by the defendant; and if the loan had not been paid and the defendant was required to use the entire $15,000 or any part thereof in payment of the corporation's loan, he would then be subrogated to the rights of the bank as a creditor of the corporation.

APPEAL by the plaintiff, Frank Allaire, as trustee, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 7th day of December, 1922, upon the verdict of a jury.

*Lowther & Smith* [*Leo C. Weiler* of counsel; *William E. Lowther* with him on the brief], for the appellant.

*Norman Handel* [*I. Maurice Wormser* of counsel], for the respondent.

FINCH, J.:

It appears that the defendant purchased 100 shares of the preferred stock of the Julius Ullman Co., Inc., for which he paid $10,000, and received a bonus of 125 shares of common stock. Said Ullman and the defendant were the sole stockholders of the corporation, and the defendant took an active part in the management of its affairs and was familiar with its financial condition.

The corporation was formed in April, 1919. The defendant purchased the stock as aforesaid on August 23, 1919. In April, May and June of 1920 trade acceptances given by the corporation for the purchase of merchandise, and other obligations, started to become due, and the corporation had not sufficient funds with which to pay the same. The defendant conceded that on or about the 27th day of April, 1920, a trade acceptance for $4,888.60 was not paid at maturity and went to protest; that on June 15, 1920, a note of the corporation for $5,000, indorsed by the defendant as accommodation indorser, was not paid and was protested. It

further appeared that on June fifth and seventh notes of the corporation were protested, and that on June twenty-second a trade acceptance was protested. Also, in the usual course, the defendant would be compelled to make good the corporate note which he had indorsed. He thereupon notified Ullman that he desired to withdraw from the corporation, and demanded the return of the $10,000 invested by him and in addition $5,000 which he claimed to be due him on account of profits on his investment. Ullman stated to the defendant, " If you take this $15,000 out of the firm, the firm will go bankrupt and nobody will get a dime," to which the defendant replied, " I don't give a damn, I am going to get mine." The defendant then proceeded to arrange with the Importers and Traders Bank to loan $32,000 to the corporation upon its entire stock in trade, which merchandise was transferred to a warehouse and the receipts delivered to the bank together with two corporate notes aggregating $32,000, in return for $32,000 received from the bank. Out of the amount so received, Ullman, by direction of the defendant, drew out $15,000 and gave it to the defendant in return for his stock certificate. The defendant at once deposited with the bank the $15,000 so received, pursuant to an agreement which he had made with the bank in order to procure the aforesaid loan to the corporation, to indemnify the bank against loss to the extent of said $15,000. Out of the balance of $17,000 remaining to the corporation after paying the defendant $15,000 as aforesaid, there was paid a balance of $3,030 due on the aforesaid corporate note upon which the defendant was liable as indorser, and other claims to the full amount of said balance, which, however, was insufficient to pay all the creditors of the corporation. A few days subsequently Ullman said to the defendant: " The money which you got here simply means that we have got to close up shop. It will only be a short time before we will have to close up because I haven't got enough money to pay the creditors," to which the defendant responded: " I don't care. I invested my money and I got out with $5,000 which you had made, and you can do as you please." On January 3, 1921, the corporation was adjudged a bankrupt, and it is conceded that at the time of such bankruptcy there were unpaid creditors having claims amounting to $14,500, which claims had their origin prior to July 9, 1920, the date when the defendant received the aforesaid $15,000.

This action is brought by the trustee in bankruptcy to recover from the defendant the said $15,000, upon the ground that it was unlawfully withdrawn by the defendant from the capital of the corporation, in violation of section 66 of the Stock Corporation Law

of 1909 (now section 15 of the Stock Corporation Law of 1923), which provides in part as follows: " No corporation which shall have refused to pay any of its notes or other obligations when due, in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. * * * Every person receiving by means of any such prohibited act or deed any property of the corporation shall be bound to account therefor to its creditors or stockholders or other trustees."

The court held that the $15,000 really never was received by the defendant, and hence that he could not be required to account therefor. In connection with said amount deposited as aforesaid, the defendant has received from the bank interest in the amount of $826.45, and the court limited any possible liability on defendant's part to this amount, charging the jury that if at the time the defendant evolved his scheme above mentioned the corporation was insolvent or its insolvency was imminent, then the defendant should be found liable in that amount. The jury found that the corporation was not then insolvent or in danger of insolvency.

We are of the opinion that this finding is against the weight of the evidence. It seems clear that the two stockholders and managers of the corporation considered it either insolvent or on the brink of insolvency, and that the defendant was resolved to withdraw his capital investment regardless of the consequences, and to avoid putting more money into the corporation by having to pay the protested note upon which he was an indorser. The entire stock in trade of the corporation was hypothecated for an amount insufficient to pay its existing debts after the $15,000 was withdrawn. In other words, the net result of the combined action of the defendant and Ullman was to transfer to the defendant in payment of his stock $10,000 of the corporate funds plus $5,000 additional, which should have gone to the creditors, thus leaving them wholly unpaid. This was just what said section 66 (now section 15) of the Stock Corporation Law was designed to prevent.

None of the testimony hereinbefore quoted was contradicted, but on the contrary is to be deemed admitted by reason of the defendant having rested on the plaintiff's case. Moreover, as bearing on the question of the corporation's insolvency, Ullman further testified that after July ninth, probably in July: " I went to Mr. Silberberg's office. I waited in the library. Mr. Silberberg came out and called me into his private office. I said to him, ' Mr. Silberberg, I am broke, and I don't know what to do.' He

said, ' Close the door,' he said, ' I will tell you what to do.' "
Plaintiff, however, was not allowed to continue this line of testimony,
the court taking the position that the $15,000 did not pass
absolutely from the corporation to the defendant, and hence the
motives of the defendant in obtaining the same were immaterial.
This testimony, however, tended to show an admission by the
defendant that a condition of insolvency either existed or was
imminent. The court gave to the defendant the benefit of leaving
it to the jury to say whether or not from the undisputed evidence
adduced by the plaintiff there flowed the inference that the cor-
poration was insolvent. The plaintiff was entitled, therefore, to
present to the jury all the evidence bearing on this question which
it was able to adduce, and the exclusion of such evidence upon
this vital question renders a new trial necessary.

Moreover, in so far as the $15,000 is concerned, it appears that
the defendant received this amount of the corporate property with-
out any consideration passing to the corporation; and if the cor-
poration at that time was insolvent or its insolvency imminent,
he must account therefor. As was said in *Ward* v. *City Trust Co.*
(192 N. Y. 61, 74): " ' Primarily, the capital of a corporation is
held for the protection of its creditors and is impressed with a
trust in their behalf, and the directors cannot lawfully, nor can
the stockholders divert the funds of a corporation to the individual
use of its members, if thereby the capital is impaired and the
corporation rendered insolvent.' "

The defendant in his answer admits receiving a check of the
corporation for $15,000 " impressed with and pursuant to a trust."
The trial court, however, apparently was of the opinion that the
defendant incurred no liability since he had taken the identical
money received, and having obtained a certificate of deposit there-
for, had indorsed this over to the bank as collateral security to
the bank for its loan to the corporation pursuant to the promise
of the defendant to deposit $15,000 with the bank before the loan
was made by it. The defendant now attempts to sustain the
judgment by claiming that the said $15,000 was applied after the
bankruptcy in reduction of the corporation's debt to the bank.
The difficulty, however, with this claim of the defendant is that
when the defendant deposited the money as collateral to the loan
of the bank to the corporation, any claim that he acquired by so
doing was held by him in his own right, and could not be offset
against the amount received by them in a fiduciary capacity. The
defendant, however, did not assume to pay the $15,000 over to the
bank as a trustee, but as an individual, and he thereafter exercised

8

individual ownership over said sum by directing a change in its investment and receiving interest thereon, and also put himself in a position where, if the merchandise collateral realized sufficient to pay the debt in full, the defendant will receive repayment of the $15,000 ahead of any payment to general creditors. As was said by CARDOZO, J., in *Morris* v. *Windsor Trust Co.* (213 N. Y. 27, 29): " A wrongdoer who has misapplied the subject of a trust is not entitled, either under the Bankruptcy Act or under the rules of equitable set-off, to apply a credit that belongs to him in his own right in cancellation of his liability as a fiduciary. A leading case is *Libby* v. *Hopkins* (104 U. S. 303). * * * The rule laid down in *Libby* v. *Hopkins* (*supra*) has been followed by the Supreme Court in bankruptcy proceedings under the present statute. (*Western Tie & Timber Co.* v. *Brown,* 196 U. S. 502, 509, 510). It has been followed by the same court where, in proceedings not in bankruptcy, the right to set-off was asserted under the general principles of equity. * * * It is in accord with the rule of set-off in bankruptcy enforced by the courts of England (2 Halsbury, The Laws of England, Title Bankruptcy and Insolvency, pp. 211, 212)."

If this were not so, one who became wrongfully possessed of the money of another would be enabled to obtain an advantage from his own wrong. In addition, to permit the defendant to realize upon any claim that he might have in his individual capacity would be to permit him to change his position from that of a stockholder to that of a creditor, and obtain a preference as against the other creditors in the merchandise of the corporation held as collateral by the bank, and perhaps, as noted, be repaid in full. This record shows that the bank still retains all but such portion of the merchandise as was sold for $1,330.25. At the time of the transaction involved, the collateral had been purchased by the corporation for $50,167.80, and an offer of $6,000 for the balance remaining with the bank was refused subsequently. It was conceded at the trial that the aggregate of all the applications, plus this offer of $6,000 for the collateral remaining on hand, left $2,000 still owing to the bank by the corporation. There is, therefore, a possibility that upon a sale by the bank of the remaining collateral, the defendant will receive back at least a portion of the $15,000 deposited by him, and the creditors receive nothing, thereby accomplishing in whole or in part, as noted, the result expressly forbidden by the statute.

Moreover the corporation's debt to the bank was not reduced by the amount of $15,000, but the defendant to the extent of the $15,000 applied by the bank is substituted in the place of the bank as a creditor of the corporation. As was said in *Fairchild*

*v. Lynch* (99 N. Y. 359, 366): " The surety upon payment becomes substituted to the creditor's right and the bond survives to support it. When default occurs the surety may sue in the right of the creditor, and standing in his place and having all his power, and for this purpose the bond remains a living and enforceable obligation."

It follows that the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., SMITH, MERRELL and MARTIN, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide the event.